### In re BP PRODUCTS NORTH AMERICA INC., Relator.

No. 01–06–00679–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 13, 2006.

---

108

Katherine D. Mackillop, Graig J. Alvarez, Otway B. Denny, Stephen Fernelius, Fulbright & Jaworski LLP, Houston, TX, James B. Galbraith, McLeod, Alexander, Powel & Apffel, P.C., Galveston, TX, for Relator.

Brent W. Coon, Brent Coon & Associates, Beaumont, TX, James D. Nebout, Burwell, Burwell & Nebout, L.L.P., Texas City, TX, David W. Holman, The Holman Law Firm, P.C., Robert E. Ammons, The Ammons Law Firm, Houston, TX, for Real Parties in Interest.

Panel consists of Justices TAFT, ALCALA, and HIGLEY.

## OPINION

ELSA ALCALA, Justice.

By petition for writ of mandamus, relator, BP Products North America Inc., challenges the trial court's July 19, 2006 order granting the motion of the real parties in interest, the Plaintiffs' Steering Committee ("Plaintiffs"),[1] to compel production of documents used by BP to compute a reserve figure reported to the Securities and Exchange Commission ("SEC").[2] Days after the March 23, 2005 explosion at the Texas City refinery, BP reported that it had reserved $700 million to resolve its estimated liability for personal injuries and fatalities arising from the incident. The Plaintiffs sought discovery of the documents used to compute the reserve figure.

In two issues, BP contends that the trial court abused its discretion by compelling the production of the materials reviewed to compute the reserve because (1) these materials are protected by the attorney-client and work product privileges and (2) disclosure of the final numerical sum to the SEC did not waive the attorney-client and work product privileges that attached to the underlying materials.

We conditionally grant the petition for writ of mandamus.

---

1. The trial court appointed a Plaintiffs' Steering Committee to speak on behalf of claimants for purposes of resolving discovery matters prior to trial.

2. The respondent is the Honorable Susan E. Criss of the 212th District Court of Galveston County.

## Background[3]

Shortly after the March 2005 explosion, BP filed with the SEC a "Report on Form 6–K"[4] stating that a reserve of $700 million would be set aside to resolve the projected claims for personal injuries and fatalities arising from the incident. The reserve figure was computed by William Noble, an in-house attorney at BP who was working on claims in the instant suit and who had handled prior suits against BP. The materials Noble used to compute the figure and his methodology were not disclosed to the SEC; rather, only the $700 million figure was disclosed.

Subsequently, the Plaintiffs sought the supportive materials in a request for production,[5] as follows:

> With respect to the statement in your Form 6–K filing with the Securities and Exchange Commission on or about July 26, 2005 that "$700 million (of the second quarter net charge) is in respect of all fatality and personal injury compensation claims associated with the incident at the Texas City refinery on 23 March 2005," please produce true and correct copies of the following:
>
> a. All documents reviewed or used by the person(s) responsible for the valuation of the "$700 million" charge taken in the second quarter of 2005;
>
> b. All documents reviewed or used by the person(s) who authorized the "$700 million" charge taken in the second quarter of 2005; and
>
> c. All documents that relate to the method used to evaluate and/or quan-

tify the "$700 million" charge taken in the second quarter of 2005.

BP objected on the ground that the request was overly broad, and BP stated that it would withhold the documents as protected by the "work-product and/or attorney-client privilege."

On April 17, the Plaintiffs filed a motion to compel production on the grounds that (1) the methodology underlying the computation of the reserve figure constitutes business advice not subject to the attorney-client or work product privileges and (2) BP waived any such privileges by disclosing the $700 million figure to the SEC and to the media.

On April 20, BP responded that its disclosure of the $700 million figure was not privileged, but that the materials used to compute the figure, along with Noble's methodology, were privileged, had not been disclosed, and were irrelevant to the instant litigation. BP appended the affidavit of Noble, in which he attested as follows, in pertinent part:

> 4 . . . . The estimate was prepared by me, acting in my role as in-house lawyer for BP Products, and as one of the lawyers working on the lawsuits arising out of the March 23 accident, using the knowledge I gained as a lawyer on those cases, as well as work product documents and attorney-client communications, all from those lawsuits.
>
> 5. In preparing this estimate to be included in a Report on Form 6–K, and as is normal when the financial impact is caused by lawsuits, I chose and

---

3. The underlying suit is *In re: Texas City Explosion March 23, 2005 Coordinated Discovery Proceedings*, No. 05–CV0337–A (212th Dist. Ct., Galveston County, Tex.).

4. "Report on Form 6–K" is a mandatory, periodic report to the SEC on the financial

position of the company. When, as here, an event occurs that is likely to affect the company's financial position, an interim report must also be filed.

5. Request for Production No. 20, "Plaintiffs' Third Set of Written Discovery."

used confidential information (*e.g.*, legal and factual analyses of the claims and lawsuits) that I knew from my work on the lawsuits to provide my estimate of potential exposure. The estimate itself is not confidential, but the analysis, mental processes and the selection of the documents I used to arrive at the estimated amount are confidential and is the same information and the same process I have used to assess and make settlement offers or to evaluate possible verdicts against my client, BP Products.

6. The documents are material prepared or mental impressions developed in anticipation of litigation or for trial of the claims made concerning the March accident by BP Products' attorneys, consultants, employees, or agents; or were communications made in anticipation of litigation or for trial between BP Products and BP Products' representatives or among BP Products' representatives, including BP Products' attorneys, consultants, employees, or agents. BP Products was sued on the same day as the accident and thus reasonably anticipated litigation as of that date.

7. Some of the documents reflect confidential communications made for the purpose of facilitating the rendition of professional legal services to BP Products with regard to the March 2005 accident: (A) between BP Products or a representative of BP Products and BP Products' lawyer or a representative of the lawyer; (B) between the lawyer and the lawyer's representative; (C) between representatives of BP Products; or (D) among lawyers and their representatives representing BP Products. These documents were not disclosed to anyone other than the personnel who assisted in the rendition of legal advice to BP Products.

8. All the work performed in providing the estimate for the Report on Form 6–K, as well as all of the documents and communications, were done or created after the March 23, 2005 accident. Additionally, the work and the documents were done or created after BP Products retained lawyers to represent it in connection with the claims arising out of the March 2005 accident, and concern the litigation about the March 2005 accident. Accordingly, the documents are exempted from listing on the privilege log under Rule 193.3(c).

On the same day that BP filed Noble's affidavit, the trial court held a hearing on the motion to compel. The Plaintiffs objected that Noble's affidavit was untimely, because it had not been filed seven days before the hearing.[6] The trial court ruled that it would "let it in" but that the Plaintiffs would be permitted more time to review it. In addition, the trial court instructed the parties to file supplemental briefs concerning the discoverability of the methodology used to estimate the reserve.

In their supplemental brief, the Plaintiffs objected that Noble's affidavit was fatally defective because it was conclusory due to its failure to identify any documents in any manner. In addition, the Plaintiffs reasserted the argument that BP's public disclosure of the reserve figure resulted in its waiver of any privilege relating to the figure. BP argued in its supplemental brief that no waiver had taken place.

On July 19, the trial court granted the Plaintiffs' motion to compel, sustaining the

---

6. Tex.R. Civ. P. 193.4.

Plaintiffs' objections to Noble's affidavit, as follows:

1) Defendant has failed to sustain its burden to show the absence of waiver of any privilege or protection that may once have attached to the subject matter of Request No. 20;

2) Defendant has waived any privilege or protection that may once have attached to the subject matter of Request No. 20 by self-serving, partial, voluntary, disclosure causing unfairness to an opposing litigant who does not have access to such information;

3) Defendant has waived any privilege or other protection that may once have attached to the subject matter of Request No. 20 by voluntary extra-judicial disclosure on its web-site and in its public comments and speeches [of which the court takes judicial notice] and through a well-orchestrated media campaign that has repeatedly incorporated such information.

4) Defendant has waived any privilege or other protection that may once have attached to the subject matter of Request No. 20 by voluntary disclosure to the federal government and because such public disclosure was intended; and

5) Based upon the admissions of defense counsel, among other things, the documents requested do not constitute work-product and constitute non-privileged business advice.

It is therefore ORDERED:

1) Plaintiffs' objections to the Affidavit of William Nobles [sic], which Defendant has not corrected, are sustained.

2) Defendants shall produce documents responsive to Request No. 20, Plaintiff's Third Set of Discovery, by no later than Monday, August 1, 2006.

3) In the event Defendant believes that any responsive document is independently privileged or protected for reasons unrelated to Request No. 20, it may submit such document for *in camera* inspection or list such documents on an amended privilege list by not later than July 28, 2006. The fact of such submission or listing on a privilege list shall not constitute waiver of any applicable and extant privilege or protection.

It is from this order that BP seeks mandamus relief.

**Discovery of Privileged Documents**

BP contends that the trial court abused its discretion by ordering the production of documents that are protected by the attorney-client and work product privileges. The Plaintiffs contend that BP failed to meet its burden to present evidence to support its asserted privileges.

**A. Standard of Review**

 Generally, the scope of discovery is within the trial court's discretion. *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex.1998). However, a trial court that issues a discovery order that is arbitrary and unreasonable, or without reference to guiding rules and principles, abuses its discretion. *Id.* If there has been a clear abuse of discretion and there is no adequate remedy by appeal, mandamus will issue. *Id.* There is not an adequate remedy by appeal when a trial court erroneously orders the disclosure of privileged information because the error cannot be corrected once the benefit of the privilege is lost. *Walker v. Packer*, 827 S.W.2d 833, 843 (Tex.1992).

**B. The Law**

 There is no presumption that documents are privileged, and the party seeking to resist discovery bears the burden of

pleading and proving an applicable privilege. *In re E.I. DuPont de Nemours and Co.,* 136 S.W.3d 218, 223, 225 (Tex.2004); *Weisel Enters., Inc. v. Curry,* 718 S.W.2d 56, 58 (Tex.1986). To meet its burden, the party seeking to assert a privilege must make a prima facie showing of the applicability of a privilege by first asserting the privilege. *In re E.I. DuPont de Nemours and Co.,* 136 S.W.3d at 223 (citing *Peeples v. Hon. Fourth Supreme Judicial Dist.,* 701 S.W.2d 635, 637 (Tex.1985)). "Asserting a Privilege" is governed by Texas Rule of Civil Procedure 193.3. TEX.R. CIV. P. 193.3.

In response to a discovery request, a party may assert a claim of privilege under Rule 193.3(c). TEX.R. CIV. P. 193.3(c). Rule 193.3(c) states, as follows:

> [A] party may withhold a privileged communication to or from a lawyer or lawyer's representative or a privileged document of a lawyer or lawyer's representative—
>
> (1) created or made from the point at which a party consults a lawyer with a view to obtaining professional legal services from the lawyer in the prosecution or defense of a specific claim in the litigation in which discovery is requested, and
>
> (2) concerning the litigation in which the discovery is requested."

*Id.* When a privilege is asserted under Rule 193.3(c), a party need not comply with TEX.R. CIV. P. 193.3(a) and (b), which require, upon request, a description of the information or materials withheld, often referred to as a privilege log, and an assertion of a specific privilege for each item or group of items withheld. TEX.R. CIV. P. 193.3(a), (b), (c).

Once a party has asserted a claim of privilege, the trial court may, upon the request of any party, conduct a hearing to determine whether the discovery should be disallowed. TEX.R. CIV. P. 193.4(a). At the hearing, the party asserting the privilege must present any evidence necessary to support the privilege. *Id.; see also In re Monsanto,* 998 S.W.2d 917, 926 (Tex.App.-Waco 1999, orig. proceeding) (explaining that asserting privilege and providing proof to support privilege are distinct concepts). This evidence may be in the form of "testimony presented at the hearing or affidavits served at least seven days before the hearing or at such other reasonable time as the court permits." TEX.R. CIV. P. 193.4(a). If, after examining the proof, "the trial court determines that an in camera review of some or all of the requested discovery is necessary, that material or information must be segregated and produced to the court in a sealed wrapper within a reasonable time following the hearing." *Id.; see Curry,* 718 S.W.2d at 58.

■ A trial court abuses its discretion if it refuses to conduct an *in camera* inspection when such review is critical to the evaluation of a privilege claim. *In re E.I. DuPont de Nemours and Co.,* 136 S.W.3d at 223. When a claim for protection is based upon the attorney-client privilege, the documents themselves may be the only evidence substantiating the privilege. *Curry,* 718 S.W.2d at 58.

■ If disclosure of the subject materials or information to third parties has occurred, the party asserting the privilege bears the burden to show that the applicable privilege has not been waived. *Jordan v. Court of Appeals for Fourth Supreme Judicial Dist.,* 701 S.W.2d 644, 649 (Tex. 1985).

## C. Analysis

■ Here, BP has the burden to assert and prove an applicable privilege. *See In re E.I. DuPont de Nemours and Co.,* 136

S.W.3d at 223; *Curry*, 718 S.W.2d at 58. BP asserted the attorney-client and work product privileges. Stated generally, Texas Rule of Evidence 503 ("the attorney-client privilege") protects from disclosure confidential communications made for the purpose of facilitating the rendition of legal services between the client and the client's lawyer. Tex.R. Evid. 503. Texas Rule of Civil Procedure 192.5 ("the work product privilege") protects from disclosure "material prepared or mental impressions developed in anticipation of litigation or for trial by or for a party, or a party's representatives," and "a communication made in anticipation of litigation or for trial between a party and the party's representatives or among the party's representatives." Tex.R. Civ. P. 192.5. An assertion that material or information is work product is an assertion of privilege. *Id.* 192.5(d). Core work product, which is "the work product of an attorney or an attorney's representatives that contains the attorney's or the attorney's representatives mental impressions, opinions, conclusions, or legal theories," is not discoverable. *Id.* 192.5(b)(1). Other work product is discoverable "only upon a showing that the party seeking discovery has substantial need of the materials in preparation of the party's case and the party is unable without undue hardship to obtain the substantial equivalent of the material by other means." *Id.* 192.5(b)(2).

Because BP asserted the attorney-client and work product privileges concerning the documents responsive to the Plaintiffs' discovery request under Rule 193.3(c), BP was relieved of asserting these privileges in a privilege log. *See* Tex.R. Civ. P. 193.3(c). The Plaintiffs requested a hearing on BP's assertions. *See* Tex.R. Civ. P. 193.4(a). At the hearing, BP introduced the affidavit of Noble to support its assertions of privilege. *See id.*

■ The Plaintiffs contend that Noble's affidavit, BP's sole proof, is fatally defective because it is conclusory in that it makes only global allegations. Specifically, the Plaintiffs contend that Noble merely attested that "some of the documents reflect confidential communications" and fail to reference any specific document. The trial court sustained the Plaintiffs' objections.

■ Global allegations in an affidavit constitute no evidence to support a claim of privilege. *In re E.I. DuPont de Nemours and Co.*, 136 S.W.3d at 224. An affidavit is conclusory if it provides no factual bases for the applicability of the privileges asserted. *Id.*

However, here, Noble's verified affidavit provides factual bases for the applicability of the attorney-client and work product privileges. Noble attests that

• he prepared the estimate in his role as in-house lawyer for BP Products and as one of the lawyers working on the lawsuits arising out of the March 23 accident;

• he prepared the estimate by using knowledge that he gained as a lawyer on those cases, as well as work product documents and attorney-client communications;

• he used confidential information (*e.g.*, legal and factual analyses of the claims and lawsuits) that he knew from his work on the lawsuits to provide his estimate of potential exposure based on the same information he has used to assess and make settlement offers or to evaluate possible verdicts against his client, BP Products;

• he used documents that consist of material prepared or mental impressions developed in anticipation of litigation or for trial of the claims made concerning the March accident by BP Products' attor-

neys, consultants, employees, or agents; or were communications made in anticipation of litigation or for trial between BP Products and BP Products' representatives or among BP Products' representatives, including BP Products' attorneys, consultants, employees, or agents;

- he performed all of the work, created all of the documents, and engaged in all communication, in providing the estimate for the figure reported, after the March 23, 2005 accident and after BP Products retained lawyers to represent it in connection with the claims arising out of the March 2005 accident, and

- he states that all of the documents concern the litigation about the March 2005 accident and are thus exempted from listing on the privilege log under Rule 193.3(c).

The affidavit is sufficient to satisfy the initial burden imposed on BP by rules 193.3 and 193.4, and by *E.I. DuPont de Nemours and Co. See* Tex.R. Civ. P. 193.3(c), 194(a); *E.I. DuPont de Nemours and Co.,* 136 S.W.3d at 223 (explaining that "[t]he prima facie standard requires only the minimum quantity of evidence necessary to support a rational inference that the allegation of fact is true").

Specifically, the affidavit supports a claim of privilege under Rule 193.3(c) by stating that the documents were created after BP hired lawyers concerning the litigation at issue here and that the documents concern BP's attorney's internal assessment of the worth of the lawsuit, such as a settlement negotiation. As noted above, Rule 193(c) specifically exempts a party claiming a privilege under that section from producing a description of the information or materials withheld. *See* Tex.R. Civ. P. 193.3(a), (b), (c). Noble provides factual bases for BP's assertion that the documents in question constituted confidential communications made for the purpose of facilitating the rendition of legal services between the client and the client's lawyer. *See* Tex.R. Evid. 503. In addition, Noble provides factual bases for BP's assertion that the documents in question constituted work product, in the form of "material prepared or mental impressions developed in anticipation of litigation or for trial" by or for a party, or a party's representatives, and "a communication made in anticipation of litigation or for trial" between a party and the party's representatives or among the party's representatives. *See* Tex.R. Civ. P. 192.5. In addition, the emphasized language provides factual bases for BP's assertion that documents at issue constitute core work product, in the form of Noble's "mental impressions, opinions, conclusions, or legal theories." *See id.* 192.5(b)(1).

In addition, the Plaintiffs contend that Noble's affidavit fails to address any specific documents. BP responds that Noble's affidavit is like those found sufficient in *DuPont* and *Shell. In re E.I. DuPont de Nemours and Co.,* 136 S.W.3d at 223–24; *Shell Western E & P, Inc. v. Oliver,* 751 S.W.2d 195, 196 (Tex.App.-Dallas 1988, orig. proceeding). In *DuPont,* the supreme court held that, "[a]n affidavit, even if it addresses groups of documents rather than each document individually, has been held to be sufficient to make a prima facie showing of attorney-client and/or work product privilege." *In re E.I. DuPont de Nemours and Co.,* 136 S.W.3d at 223–24. In *Shell Western E & P,* Shell established a prima facie case of attorney-client privilege where a Shell affiant swore that the "documents ... were written by a lawyer to a client" and "consist of communications from client to a Shell ... lawyer." *Shell Western E & P, Inc.,* 751 S.W.2d at 196. We conclude, however, that *DuPont* and *Shell* are inapplicable to a determination of the sufficiency of the affidavit in the in-

stant case because, in both *DuPont* and in *Shell,* some form of document identification took place. *See E.I. DuPont de Nemours and Co.,* 136 S.W.3d at 222 (stating that Dupont served a privilege log describing the documents withheld); *Shell Western E & P, Inc.,* 751 S.W.2d at 196 (stating that "there is no dispute that Shell specifically pleaded the attorney-client privilege for each of the documents it wished to withhold").

BP contends that the specific details of each document are restricted to avoid unintentionally disclosing attorney-client communications and work product information. For this reason, however, the documents themselves constitute the only sufficient evidence substantiating the claim of privilege. *See Shell Western E & P, Inc.,* 751 S.W.2d at 196 (explaining that "[t]he documents themselves may constitute the only sufficient evidence, and certainly the best evidence, conclusively substantiating—or overcoming—the claim of privilege, and, under the facts ... the trial court 'had no choice but to review the allegedly privileged documents' "); *Curry,* 718 S.W.2d at 58 (holding that "when ... the claim for protection is based on a specific privilege, such as attorney-client or attorney work product, the documents themselves may constitute the only evidence substantiating the claim of privilege").

Moreover, in *Curry,* the supreme court reviewed a "summary listing of documents under the heading 'Attorney–Client/Attorney Work–Product" and held that this "was no evidence that any particular document was protected by a specific privilege." *See* 718 S.W.2d at 58. Notably, the court held that, even in the total absence of evidence to support the privilege, the trial court had no choice but to conduct *in camera* inspection. *Id.* (disagreeing with appellate court's holding that whether to

conduct *in camera* inspection of documents claimed to be privileged is purely an exercise of trial court's discretion).

In challenging BP's assertion of privilege, the Plaintiffs requested *in camera* inspection, which the trial court initially appeared to agree was necessary for it to rule on the issue. During the hearing, the trial court stated, "I think on the request for the underlying documents I think I'm going to have to look at them." The trial court, however, never conducted the *in camera* hearing, nor did it order BP to produce the documents for inspection.

We conclude that the trial court abused its discretion in determining that Noble's affidavit was conclusory and, therefore, insufficient to assert the applicability of the attorney-client and work product privileges.

### Waiver

■ We next consider whether BP waived the attorney-client and work product privileges by disclosure to third parties. *See Jordan,* 701 S.W.2d at 649. BP contends that its disclosure of the $700 million reserve figure to the SEC and to the media did not waive its attorney-client and work product privileges as to the supporting documents and methodology that the Plaintiffs seek through discovery. We agree.

BP, as a public company subject to the securities laws, is compelled to file periodic financial statements with the SEC. *See* 15 U.S.C. § 781; 17 C.F.R. § 240.13a–1. When an event occurs between periodic reports that may impact the company's financial stability, as here, additional reports must be filed. Here, subsequent to the explosion, BP reported to the SEC the amount of cash reserve that Noble projected would be necessary for BP to set aside to cover the costs of the claims stemming from the incident. In his affidavit, Noble

attested that BP's disclosure was specifically limited to the final $700 million figure and that no underlying methodology or information was disclosed outside of BP personnel.

The Plaintiffs contend that BP's disclosure of the reserve figure to the SEC operated as a general waiver of any privileges that may have attached to the underlying documents. As the Plaintiffs contend, precedent as to waiver in this context is limited because Texas state courts have not spoken to the issue and there is disagreement among the federal circuit courts.[7] The rule that the Fifth Circuit appears to espouse is that disclosure of materials in the course of complying with reporting requirements of governmental agencies can act as a complete waiver of the attorney-client and work product privileges as to all other parties. *See United States v. El Paso, Co.*, 682 F.2d 530, 538–40 (5th Cir.1982).

In *El Paso*, the Fifth Circuit explained that publicly-held companies must file certain financial statements with the SEC and that these statements must reflect that monies have been set aside to cover contingent future tax liabilities owed to the IRS. *Id.* at 534. The analysis supporting the sum of the projected liability reported is known as the "tax pool analysis." *Id.* These analyses are verified by indepen-

dent auditors. *Id.* at 540. There, to comply with securities laws, El Paso reported to the SEC its contingent future tax liabilities. *Id.* at 533–34. Hence, there, as in the instant case, we have a corporation reporting a sum to a governmental agency that is derived from an underlying analysis of the corporation's potential liability. There, unlike in the instant case, El Paso's analyses were also disclosed to independent auditors.

In *El Paso*, the IRS sought "all analyses prepared by the El Paso Company regarding potential tax liabilities and tax problems." *Id.* at 533. When El Paso refused, the IRS issued a summons. *Id.* El Paso objected, asserting the attorney-client and work product privileges. *Id.* The trial court ordered production. *Id.*

On review, the Fifth Circuit held that the attorney-client privilege did not protect El Paso's tax pool analysis because, by disclosing the analyses to the independent auditors, El Paso had "breached the confidentiality needed to shield its attorney-client communications." *Id.* at 542. The court explained that "disclosure of any significant portion of a confidential communication waives the privilege as to the whole." *Id.* at 538.

While the rationale in *El Paso* shows that disclosure can operate as a waiver, *El Paso* is clearly distinguishable from the

---

**7.** *See Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1426–30 (3d Cir.1991) (concluding that attorney-client and work product privileges are waived even if governmental agency and disclosing corporation entered into confidentiality agreement); *In re Columbia/HCA Healthcare Corp.*, 293 F.3d 289, 302–07 (6th Cir.2002) (adopting *per se* waiver rule with respect to attorney-client and work product privileges); *Permian Corp. v. United States*, 665 F.2d 1214, 1217–18, 1219–22 (D.C.Cir.1981) (concluding that attorney-client privilege was waived when documents were disclosed to SEC, but that work product privilege was not). The second and

eighth circuits appear to be in the minority. *See In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir.1993) (refusing to adopt a *per se* rule that work product privilege is waived when materials are voluntarily produced to SEC and determining that production is deemed "voluntary" unless compulsory legal process compels production); *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, (8th Cir.1977) (adopting selective waiver doctrine as to attorney-client privilege). The ninth circuit has not settled its position. *United States v. Bergonzi*, 403 F.3d 1048, 1050 (9th Cir. 2005).

case at hand. In *El Paso,* portions of the tax pool analysis were disclosed to independent auditors. Here, BP strictly limited its disclosure to the reserve figure itself and there has been no disclosure of BP's methodology outside of BP personnel.

Accordingly, we conclude that BP has not waived its attorney-client and work product privileges with regard to the underlying methodology.

## Conclusion

We hold that the trial court abused its discretion by concluding that Noble's affidavit was conclusory and by striking the affidavit as insufficient to invoke BP's asserted privileges. As acknowledged in oral argument, BP has requested that we hold that the documents are privileged without an *in camera* review or, in the alternative, that we order that an *in camera* review be conducted. We do not reach these questions. Our holding today is limited to the conclusion that the affidavit is not conclusory, and we remand to the trial court for further proceedings consistent with this opinion.

Accordingly, we conditionally grant BP's petition for writ of mandamus and direct the trial court to vacate its July 19, 2006 order compelling production of the documents responsive to "Request for Production No. 20" of "Plaintiffs' Third Set of Written Discovery." We lift our stay of proceedings ordered July 27, 2006. We are confident that the trial court will promptly comply, and our writ will issue only if it does not.