Opinion
issued December 23, 2010  

 

 

 

 



 

 

 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-10-00371-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



IN RE ENERGY XXI GULF COAST, INC. AND
ENERGY XXI (BERMUDA) LIMITED, FORMERLY KNOWN AS ENERGY XXI ACQUISITION
CORPORATION (BERMUDA) LIMITED, Relators

 

 



Original Proceeding on Petition for Writ of Mandamus

 

 



MEMORANDUM
OPINION

By a petition for writ of mandamus, relators,
Energy XXI Gulf Coast, Inc. and Energy XXI (Bermuda) Limited, formerly known as
Energy XXI Acquisition Corporation (Bermuda) Limited (collectively, “Energy”), challenge
the trial court’s order (i) overruling Energy’s privilege objections to a first
set of documents and compelling Energy to produce those documents to real party
in interest, Lockton Companies, LLC (“Lockton”),[1]
and (ii) sustaining Energy’s privilege objections to a second set of documents,
but nevertheless ordering Energy to produce those privileged documents to Lockton
subject to a protective order “and for review on an attorney’s eyes only
basis.”[2]  In three issues, Energy contends that it
lacks an adequate remedy by appeal and the trial court abused its discretion in
overruling Energy’s privilege objections as to the first set of documents and
in ordering the production of the second set of privileged documents “for
attorney’s eyes only.”   

We conditionally grant the petition
for writ of mandamus.

Background

          Lockton
served as an insurance broker for Energy, an oil and gas exploration company, during
periods in 2006 and 2007, and Energy obtained through Lockton well-control
insurance, which provides coverage for costs associated with oil and gas well
blowouts. The parties agree that on January 20, 2007, Energy representatives,
including John Schiller, West Griffin, and Steve Weyel, met with Lockton’s
account brokers, Mark Mozell and John Rathmell, to discuss whether the
applicable well-control insurance should be increased for a Louisiana well in
which Energy maintained a 35 percent working interest.  At that time, because Energy’s well-control
insurance limit for this well was $25 million, it had  $8.75 million available in well-control
insurance coverage.  The parties disagree
as to whether, at the June 20th meeting, Energy requested that Lockton increase
its applicable coverage on the Louisiana well to $50 million.  Energy alleges that it did, and Lockton asserts
that no such instruction was given and, instead, Energy indicated that it would
provide Lockton with an answer at a later date, which Energy never did.  In June 2007, the well suffered a blow out,
triggering Energy’s well-control insurance and giving rise to the underlying
dispute.    

Contending that it had, prior to the
blowout, instructed Lockton to increase the applicable well-control insurance from
$25 million to $50 million and Lockton had failed to secure the increased
coverage, Energy brought suit against Lockton, asserting claims for negligence,
negligent misrepresentation, breach of fiduciary duty, breach of contract and
implied contract, violations of the Texas Insurance Code, and fraud.  A lengthy discovery dispute developed and, during
the course of this dispute, Lockton filed a motion to compel Energy to produce certain
documents that Energy had resisted producing. 
Energy objected to Lockton’s motion to compel and filed a privilege log,
within which Energy asserted that certain documents are covered by the attorney-client
and work-product privileges.  Energy also
filed, on April 5, 2010, affidavits prepared by Granger Anderson, Energy’s Vice
President of Land, West Griffin, Energy’s Chief Financial Officer, and BoShara
Boyd, Energy’s Vice President of Law, in support of its privilege objections.  

The trial court conducted a multi-day
hearing, during which it considered Lockton’s motion to compel and Energy’s
objections, and it conducted an in camera review of the documents identified by
Energy as privileged.  The trial court
divided the subject documents into two sets and made separate rulings in regard
to each set.  The first set of documents are
Energy’s internal communications related to the allegations in Energy’s Fifth
Amended Petition in the underlying case and predate November 19, 2007.  The second set of documents are all of
Energy’s “internal and external communications relating to the blow-out
preventer case,” a separate lawsuit involving some separate parties that arose from
the well blowout.  In the challenged
order, the trial court expressly noted that it had considered Energy’s
objections under Texas Rule of Civil Procedure 192.5, which sets forth the
work-product privilege, as well as Energy’s affidavits.  In the first paragraph of the order, the
trial court overruled Energy’s privilege objections “as to all of [Energy’s]
internal communications” before November 19, 2007 and ordered Energy to produce
this first set of documents, which it identified by Bates Numbers, to
Lockton.  In the second paragraph of the
order, the trial court sustained Energy’s privilege objections “to all of its
internal and external communications relating to the blow-out preventer case.”  However, the trial court ordered Energy to
produce this second set of documents to Lockton “subject to the parties’
protective order and for review on an attorney’s eyes only basis.”

Standard of Review

Mandamus is an extraordinary remedy,
which is available only when (1) a trial court clearly abuses its discretion
and (2) there is no adequate remedy by appeal.  In re
Prudential Ins. Co. of Am., 148 S.W.3d 124, 135–36 (Tex. 2004); In re Unitec Elevator Servs. Co., 178
S.W.3d 53, 57 (Tex. App.—Houston [1st Dist.] 2005, orig. proceeding).  A trial court clearly abuses its discretion if
it reaches a decision so arbitrary and unreasonable as to amount to a clear and
prejudicial error of law.  Walker v. Packer, 827 S.W.2d 833, 839
(Tex. 1992).  With respect to a trial
court’s determination of legal principles, “a trial court has no ‘discretion’
in determining what the law is or applying the law to facts.”  In re
Prudential, 148 S.W.3d at 135 (quoting Walker,
827 S.W.2d at 840).  Appeal is inadequate
when a trial court erroneously orders the production of confidential
information or privileged documents.  In re Ford Motor Co., 211 S.W.3d 295, 298
(Tex. 2006); In re E.I. DuPont de Nemours
and Co., 136 S.W.3d 218, 223 (Tex. 2004); see also In Re BP Prods. N. Am. Inc., 263 S.W.3d 106, 111 (Tex. App.—Houston
[1st Dist.] 2006, orig. proceeding)  (“There
is not an adequate remedy by appeal when a trial court erroneously orders the
disclosure of privileged information because the error cannot be corrected once
the benefit of the privilege is lost.”).

Work-Product Privilege

          In
its first and third issues, Energy argues that it has no adequate remedy by
appeal and the trial court abused its discretion in overruling its work-product
privilege objections as to the first set of documents and compelling it to
produce those documents to Lockton because, as revealed by an e-mail contained
within the documents, “[f]rom 3:13 p.m. October 11, 2007, there was more than
an abstract possibility that there would be litigation” between Energy and
Lockton and “[f]rom that point forward, both parties were on notice that the
other party unequivocally and unambiguously stood in opposition to the other’s
claims.  Litigation ensued.”

          The
party who seeks to limit discovery by asserting a privilege has the burden of
proof.  In re E.I. DuPont de Nemours and Co., 136 S.W.3d at 223.  “To meet its burden, the party seeking to
assert a privilege must make a prima facie showing of the applicability of a
privilege by first asserting the privilege.” 
In Re BP Prods. N. Am. Inc., 263
S.W.3d at 112.  The documents in issue
may themselves constitute sufficient evidence to make a prima facie showing of
attorney-client or work-product privilege. 
In re E.I. DuPont de Nemours and
Co., 136 S.W.3d at 223.  

“Work product” is defined as: 

(1)     material
prepared or mental impressions developed in
anticipation of litigation or for trial by or for a party or a party’s
representatives, including the party’s attorneys, consultants, sureties,
indemnitors, insurers, employees, or agents; or 

 

(2)     a
communication made in anticipation of litigation or for trial between a party
and the party’s representatives or among a party’s representatives, including
the party’s attorneys, consultants, sureties, indemnitors, insurers, employees,
or agents.

 

Tex. R. Civ.
P. 192.5(a) (emphasis
added).  The Texas Supreme Court has
generally described “work product” as “specific documents, reports,
communications, memoranda, mental impressions, conclusions, opinions, or legal
theories, prepared and assembled in
actual anticipation of litigation or for trial.”   Nat’l Tank Co. v. Brotherton, 851 S.W.2d
193, 200 (Tex. 1993) (emphasis added). 

The “anticipation of litigation” test
is met when a reasonable person would have concluded from the totality of the
circumstances that there was a substantial chance that litigation would ensue
and the party asserting the work product privilege subjectively believed in
good faith that there was a substantial chance that litigation would ensue.  Id.
at 195, 204, 207; see also Trevino v.
Ortega, 969 S.W.2d 950, 956 (Tex. 1998) (stating that “trial courts must
look at the totality of the circumstances and decide whether a reasonable
person in the party’s position would have anticipated litigation and whether
the party actually did anticipate litigation”). 
A “substantial chance of litigation” does not “refer to any particular
statistical probability that litigation will occur” but “simply means that
litigation is more than merely an abstract possibility or unwarranted fear.”  Brotherton,
851 S.W.2d at 204.  Common sense dictates
that a party may reasonably anticipate suit being filed, and conduct an
investigation to prepare for anticipated litigation, before a party manifests
an intent to sue by filing suit.  Id.; see
also In re Tex. Farmers Ins. Exchange, 990 S.W.2d 337, 342 (Tex. App.—Texarkana
1999, orig. proceeding  [mand. denied]).

The critical issue presented to this
Court is whether Energy established that the work-product privilege attached to
protect certain internal communications after 3:13 p.m. on October 11, 2007 when
Lockton sent to Energy an e-mail in which Lockton denied Energy’s claim that
Energy had requested a $25 million increase in well-control insurance on the
Louisiana well and, thus, confirming that only $25 million in coverage, instead
of $50 million, had been secured on Energy’s behalf.  The trial court, after conducting an
in-camera review of Energy’s internal communications, necessarily found that
Energy had not established the applicability of the work-product privilege to these
communications.  Rather, the trial court
found November 19, 2007 to be the date on which the work-product privilege
attached to protect Energy’s internal communications.  

Initially, we must address Lockton’s
extensive complaints about the trial court’s proceedings below.  Lockton argues that Energy did not establish
a prima facie case of the work-product privilege because it did not timely file
affidavits or other evidence and did not formally introduce the affidavits or
other evidence in support of its claims of privilege.  Alternatively, Lockton argues that, even if
Energy’s affidavits were in fact timely filed and properly considered, Energy’s
affidavits only apply to a small subset of the documents that the trial court
reviewed in camera.  Based upon the
express terms of the trial court’s order and settled law, we reject Lockton’s
procedural complaints.

The trial court, in its order,
included a written notation that it considered Energy’s objections under rule
192.5 and the affidavits filed by Energy on April 5, 2010.  Lockton’s suggestion that the trial court did
not, or could not, have considered the affidavits is contrary to the plain language
of the order.  Also, Lockton’s suggestion
is contrary to case law, which provides that our review should include the
affidavits because the “record of the hearing” and the trial court’s own order “shows
that the parties and the court undisputedly considered the affidavits.”  In re
Monsanto Co., 998 S.W.2d 917, 926 (Tex. App.—Waco 1999, orig. proceeding).  In regard to Lockton’s assertion that Energy was
required to present affidavits or evidence to establish its claim of privilege
with respect to each document that the trial court reviewed in camera, the supreme
court, as noted above, has stated that the documents in issue may themselves
constitute sufficient evidence to establish the work-product privilege.  In re
E.I. DuPont de Nemours and Co., 136 S.W.3d at 223.  Accordingly, in conducting our review of the
trial court’s order compelling the production of Energy’s internal
communications that are in the sealed record before us, i.e., the internal
Energy communications between 3:13 p.m. on October 11, 2007 to November 19,
2007, the date the trial court found that the privilege applies,[3] we
will consider the affidavits filed by Energy, the documents the trial court
reviewed in camera, and the other documents in the record before us.[4]  

In order to determine if the
work-product privilege attached on October 11, 2007 at 3:13 p.m., following Lockton’s
e-mail to Energy, we review the parties’ preceding communications.  On October 11, 2007, at 9:36 a.m., Energy’s
Jerry Mysak e-mailed Lockton’s Heather McCarthy, asserting that Energy had “advised”
Lockton’s Mark Mozell “to increase limits as discussed with Glynn Broussard [of
Energy] in E-mail.”  Mysak included in his
e-mail to McCarthy a copy of a January 28, 2007 e-mail from Mark Mozell of
Lockton to Broussard of Energy in which Mozell discussed the possibility of
increasing coverage on the Louisiana well. 
Mysak stated in the e-mail, “We need to do this prior to the well being
spud” and “Time frame is around year end 2006 since well drilled early
2007.  Need to address ASAP—of very high
importance!!!!!!”  

Subsequently, that afternoon, Mark
Mozell of Lockton e-mailed John Rathmell of Lockton to report that he had
received a telephone call from Mysak during which Mysak asserted that Energy
had previously instructed Lockton to increase coverage on the Louisiana well.  In this e-mail, Mozell reported to Rathmell
that he had advised Mysak during this telephone conversation that Lockton had
never received confirmation from Energy to increase coverage on the well.  Mozell further stated that Mysak had then
claimed that Glenn Broussard of Energy had called Mozell and had instructed him
to increase coverage on the well.  Mozell
reported to Rathmell that he had responded, “Yeah right!”

Subsequent to this phone conversation,
at 3:13 p.m. on the same day, Mozell e-mailed Mysak in response to the coverage
inquiries.  Mozell stated,

Jerry, pursuant to our conversation this afternoon,
below is an e-mail from John Rathmell to Steve and West [of Energy] relative to
suggestion about increasing the limit of liability. We [Lockton] received no
response or communication from your firm [Energy] subsequently instructing us
to do so.  As such, no request was made
to underwriters to increase the limit of liability.

 

Please call me or John if you wish to discuss further.

 

As noted, Mozell included in this
e-mail the referenced January 29, 2007 e-mail from Rathmell to Lockton, which
included a “strong” recommendation that Energy carry, at a minimum, $50 million
in coverage on the Louisiana well. In the January 29, 2007 e-mail, Rathmell
stated: 

Steve and West:

 

Further to our call I spoke to Mark Mozell about the
potential for EXII to take an interest in a Area II well with an AFE
approaching $30M.  Currently you have a
limit of $25M for Area II Wet Wells (Marsh). 
We generally recommend that you carry limits around 3-5 times the dry
hole cost.  At a minimum you should carry
limits of $50M.

 

We are strongly recommending that we increase the
limits for the higher AFE wells.

 

We are ready to discuss ASAP.

          

The October 11, 2007 e-mail sent from
Lockton to Energy at 3:13 p.m. is the e-mail that Energy contends triggered its
anticipation of litigation against Lockton. 
Energy asserts that the work-product privilege protects its subsequent internal
communications between Energy employees that were made in anticipation of
litigation.  In support of its claim of
privilege, Energy submitted the affidavits of Anderson and Griffin.  In his affidavit, Anderson testified,

I am the Vice-President of Land of Energy XXI and was
in October 2007.  Attached to this affidavit
are certain documents which I was the author of.  Such communications took place in October
2007.  I sent these e-mails, thinking
they were private communications between members of management of the
company.  I sent these private
communications expressly for the purpose of disclosing, discussing, and
thinking about different strategies that would be available for Energy XXI,
should it decide to go forward with a lawsuit against Lockton.  At this time, I knew that Lockton had denied
that they had ever been given instructions regarding the Cote de Mer [the Louisiana
well].  I also know that Energy XXI felt
that Lockton had not acted properly with respect to Cote de Mer [the Louisiana well],
and was thinking about its legal options. 
Accordingly, the emails attached authored by me after October 11, 2007
deal with no business purpose other than the possibility of litigation, and the
litigation thoughts that I had, regarding the business dispute with
Lockton.  At this point, litigation with
Lockton was being actively discussed; it was more than an abstract possibility.

 

Griffin provided identical testimony
in regard to documents that he had authored. 
In addition to these affidavits, which by their plain terms apply to
documents authored by Anderson and Griffin, the trial court had the sealed documents
themselves to consider and the other documents in the record.  Because the trial court reviewed them in camera
and they remain sealed in the record before us, we are not at liberty to
discuss the contents of these documents in our opinion, but they are extremely
important to our review.  

After considering these documents,
the correspondence preceding the “triggering” 3:13 p.m. e-mail, the substance
of the triggering e-mail itself, and the affidavits submitted to the trial
court, we conclude that Energy established the applicability of the
work-product privilege with respect to the internal communications that the
trial court reviewed in camera.  The
record before us makes clear that, prior to the 3:13 p.m. e-mail, Energy
executives and employees questioned whether Lockton had secured the additional
coverage.  Although some of Energy’s
correspondence reflects that even Energy’s own employees openly questioned what
was done by Energy to obtain coverage, it is evident that Energy employees were
discussing whether they could prove that the fault lay with Lockton.  

On October 11, 2007, Energy made
contact with Lockton, both by telephone conversation and e-mail, informing Lockton
that it was taking the position that Energy had requested additional coverage
and Lockton had failed to secure the requested, additional coverage.  Mozell’s own internal e-mail to Rathmell at
Lockton recites that, during his conversation with Mysak, Mysak asserted that
Energy had requested the additional coverage and Mozell rejected outright Mysak’s
assertion that any such verbal request had been made by Energy.  Moreover, with its 3:13 p.m. e-mail, Lockton
provided Energy with a more formal response in which Lockton stated that, on
January 29, 2007, it had recommended to Energy that additional coverage be
obtained, and Lockton included in this e-mail its prior recommendation.  Lockton also stated that, despite its strong
recommendation, Lockton had “received no response or communication from” Energy
and, accordingly, Lockton had made “no request” to the underwriters “to
increase the limit of liability” on the Louisiana well.  Thus, at 3:13 p.m., Lockton officially denied
responsibility for any coverage deficiency and specifically denied Energy’s assertion
that it had in fact made a request for additional insurance coverage on the
well.  Although we cannot detail the
substance contained in the documents reviewed in camera by the trial court, an
Energy e-mail, timed shortly after Lockton’s denial, reveals that Energy believed
it could “make [a] case”[5]
against Lockton.

The documents establish that, as of
3:13 p.m. on October 11, 2007, both Energy and Lockton were taking directly
adverse positions as to which party stood at fault for failing to secure an
additional $25 million worth of insurance coverage for a well that subsequently
had blown out.  The stakes were
high.  The positions were clear.  A reasonable person would have to conclude
from the totality of the circumstances that there was a substantial chance that
litigation would ensue between Energy and Lockton.  Brotherton, 851 S.W.2d at 203–04,
207.  Moreover, based upon the affidavits
and the correspondence contained in the record that preceded the 3:13 p.m.
e-mail, and based upon the sealed documents themselves, we conclude that Energy
subjectively believed in good faith that there was a substantial chance that
litigation would ensue.  Id.  Thus, we further conclude that Energy satisfied
both the objective and subjective tests set forth in Brotherton.  In sum, Energy
established that the internal communications in the sealed record before us are
protected by the work-product privilege. 
Accordingly, we hold that the trial court abused its discretion in
compelling Energy to produce these documents. 
We further hold that because Energy would lose the benefit of its
privilege by having to produce these documents, Energy has no adequate remedy
by appeal.  See In re Ford Motor Co., 211 S.W.3d at
298.

Finally, we must reject Lockton’s
alternative argument that Energy’s internal communications are discoverable because
they are “witness statements.”  As
Lockton notes, “witness statements” under rule 192.3, even if made or prepared
in anticipation of litigation or for trial, are “not work product protected
from discovery.”  Tex. R. Civ. P. 192.5(c)(1).  A witness statement is defined as “(1) a written statement signed or
otherwise adopted or approved in writing by the person making it, or (2) a
stenographic, mechanical, electrical, or other type of recording of a witness’s
oral statement, or any substantially verbatim transcription of such a
recording.”  Tex. R. Civ. P. 192.3(h). 
“Notes taken during a conversation or interview with a witness are not a
witness statement.”  Id.  Lockton cited no
authority for the proposition that internal executive e-mails made in
anticipation of litigation that would otherwise qualify as protected work
product somehow constitute discoverable witness statements.[6]  The plain language of the rule suggests that
these types of internal communications are not discoverable witness statements.

We sustain Energy’s first issue and
that portion of its third issue in which it contends that it has no adequate
remedy by appeal to challenge the trial court’s order that it produce the first
set of documents.

“Attorney’s-Eyes Only” Provision

In its second and third issues,
Energy argues that it has no adequate remedy by appeal and the trial court
abused its discretion in ordering Energy to produce the second set of
privileged documents related to the blow-out-preventer litigation to Lockton
subject to a protective order “and for review on an attorney’s eyes only basis”
because such an order is contrary to the Texas Rules of Civil Procedure and is
inappropriate in that they are privileged.

Lockton has not challenged the trial
court’s ruling sustaining Energy’s privilege objections to the second set of documents
related to the blow-out-preventer case. 
There is no authority that would allow a trial court to order a party to
produce privileged documents to the opposing party’s attorney, even with the
qualification that the documents be produced for “attorney’s eyes only” and
subject to the parties’ protective order. 
At oral argument, Lockton essentially conceded that there is no
authority for such an order. 
Accordingly, we hold that the trial court abused its discretion in
compelling Energy to produce these documents to Lockton on an “attorney’s-eyes
only” basis, after it had sustained Energy’s privilege objections to produce these
documents.  We further hold that Energy
has no adequate remedy by appeal.  See In re Ford Motor Co., 211 S.W.3d at
298. 

We sustain Energy’s second issue and
that portion of its third issue in which it contends that it has no adequate
remedy by appeal to challenge the trial court’s order that it produce the
second set of documents.

 

 

 

 

 

 

 

 

Conclusion

          We
conditionally grant the petition for writ of mandamus, direct the trial court
to vacate its May 4, 2010 order, and direct the trial court to enter an order sustaining
Energy’s privilege objections to the first set of documents described in the
first paragraph of its May 4, 2010 order and to sustain Energy’s privilege
objections to the second set of documents described in the second paragraph of
its May 4, 2010 order without compelling Energy to produce its privileged
documents to Lockton.  The writ will
issue only if the trial court fails to comply.

 

 

Terry Jennings

Justice

 

Panel consists of Justices Jennings,
Alcala, and Sharp.

 











[1]           Lockton identifies the following other
real parties in interest: Houston Series of Lockton Companies, LLC, Lockton
Insurance Agency, Inc., Lockton Companies of Houston, Inc., formerly known as
Lockton Insurance Agency of Houston, Inc., John Rathmell, and Mark Mozell.  We collectively refer to these parties as
“Lockton.”

 





[2]           The underlying case is Energy XXI
Gulf Coast, Inc. v. Lockton Companies, LLC, No. 2008- 35345, in the
157th Judicial District Court of Harris County, Texas, the Honorable Randy
Wilson presiding.





[3]           Lockton does not challenge the trial
court’s finding that the work-product privilege applies to Energy’s documents
dated on or after November 19, 2007.

 





[4]           The trial court’s order identifies by
Bates Number the first set of documents that Energy is ordered to produce.  The trial court identifies the following
documents: ENERGY XXI 025891-025896; 030916; 061164-061239; 061275-061330;
066312-066323; 066326; 066359-066360; 066589-066591; 066801-066802; 066808-066828;
and 066834-066845. However, on appeal, Energy states that certain documents
identified by the trial court in its order are no longer at issue.  Accordingly, based upon its concession, we
now consider the applicability of the work-product privilege to the following
documents:  ENERGY XXI 030916;
061164-061239; 066321-066323; 066326; 066359-066360; and 066819-066828.





[5]           This passage is contained in one of
the sealed e-mails, but has previously been disclosed in public documents filed
with the Court.





[6]           Within its response, Lockton agrees
that, under rule 192.5, communications between a party and its representatives
can qualify as protected work-product, but it further argues that it is “still
highly relevant” that no lawyers were copied by Energy representatives on the
e-mails at issue.  We agree that the
inclusion of lawyers on communications could be “highly relevant” in
determining the applicability of the work-product privilege, but the fact that
no lawyers were involved in the communications at issue does not trump the
documents themselves, which we conclude establish that the communications were
made in anticipation of litigation.