ACCEPTED
01-15-00600-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
8/10/2015 5:17:45 PM
CHRISTOPHER PRINE
CLERK

NO. 01-15-00600-CV

IN THE COURT OF APPEALS

FOR THE FIRST DISTRICT OF TEXAS

AT HOUSTON

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
8/10/2015 5:17:45 PM
CHRISTOPHER A. PRINE
Clerk

*In re:*

*UNION PACIFIC RAILROAD COMPANY,*

*Relator.*

**MANDAMUS REPLY**

**HAYNES AND BOONE, LLP**

**Kent Rutter**
**State Bar No. 00797364**
**Christina Crozier**
**State Bar No. 24050466**
**1221 McKinney, Suite 2100**
**Houston, Texas 77010-2007**
**Telephone: (713) 547-2000**
**Telecopier: (713) 547-2600**
*Kent.Rutter@haynesboone.com*
*Christina.Crozier@haynesboone.com*

**KANE RUSSELL COLEMAN & LOGAN PC**

**Marcy Lynn Rothman**
**State Bar No. 17318500**
**M. Daniel Guerra**
**State Bar No. 00793865**
**Galleria Tower II, 10th Floor**
**5051 Westheimer Road**
**Houston, Texas 77056**
**Telephone: (713) 425-7444**
**Telecopier: (713) 425-7700**
*MRothman@krcl.com*
*DGuerra@krcl.com*

*Attorneys for Relator,*
*Union Pacific Railroad Company*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................i

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION ..............................................................................................1

ARGUMENT IN REPLY ....................................................................................2

I.     The Trichels misrepresent the facts ..................................................................2

II.    Union Pacific met its burden to make a prima facie showing that the consulting expert privilege and work product doctrine apply ...................4

     A.     The party resisting discovery has the burden to present a minimum quantum of evidence supporting the privilege .....................4

     B.     Koenig's affidavit provided the minimum quantum of evidence to support Union Pacific's objections ....................................5

     C.     Koenig's affidavit met all procedural requirements ............................7

III.    Union Pacific did not waive the consulting expert privilege .........................8

     A.     Union Pacific did not waive the consulting expert privilege by filing Koenig's affidavit ..................................................................8

     B.     The offensive use doctrine does not apply because Union Pacific does not assert any affirmative claims ....................................10

     C.     Union Pacific did not waive the privilege by attempting to work with the Trichels to preserve evidence ......................................11

IV.    The consulting expert privilege is not defeated simply because testifying experts read Koenig's affidavit ....................................................12

V.    Union Pacific was not required to specify every objectionable question in its mandamus petition ................................................................13

CONCLUSION AND PRAYER .........................................................................14

VERIFICATION................................................................................................16

- i -

CERTIFICATE OF COMPLIANCE.................................................................17

CERTIFICATE OF SERVICE ......................................................................18

APPENDIX ...............................................................................Tab A

# TABLE OF AUTHORITIES

C<small>ASES</small>

*Axelson, Inc. v. McIlhany*,
   798 S.W.2d 550 (Tex. 1990) ..............................................................1, 7, 12, 13

*In re BP Products N. Am. Inc.*,
   263 S.W.3d 106 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding) ....4, 6

*In re E.I. DuPont de Nemours and Co.*,
   136 S.W.3d 218 (Tex. 2004) ...............................................................................4, 6

*In re Energy Transfer Partners, L.P.*,
   No. 12-08-00397-CV, 2009 WL 1028056 (Tex. App.—Tyler Apr.
   15, 2009, orig. proceeding) (mem. op.) ........................................................7, 12

*In re Mendez*,
   234 S.W.3d 105 (Tex. App.—El Paso 2007, orig. proceeding) .......................1, 9

*In re Monsanto Co.*,
   998 S.W.2d 917 (Tex. App.—Waco 1999, orig. proceeding) ..........................7, 8

*Republic Ins. Co. v. Davis*,
   856 S.W.2d 158 (Tex. 1993) ...........................................................................10, 11

*In re Union Pac. Resources Co.*,
   22 S.W.3d 338 (Tex. 1999) ....................................................................................5

*West v. Solito*,
   563 S.W.2d 240 (Tex. 1978) ..................................................................................1

R<small>ULES</small>

T<small>EX</small>. R. C<small>IV</small>. P. 192.3(e) .............................................................................................12, 13

T<small>EX</small>. R. C<small>IV</small>. P. 192.5 ......................................................................................................5

T<small>EX</small>. R. C<small>IV</small>. P. 192.7 ......................................................................................................5

T<small>EX</small>. R. C<small>IV</small>. P. 193.4 ......................................................................................................5

T<small>EX</small>. R. C<small>IV</small>. P. 194.3 ......................................................................................................7

T<small>EX</small>. R. C<small>IV</small>. P. 199.6 ...............................................................................................4, 5, 7

## INTRODUCTION

There is a significant disconnect between Union Pacific's Mandamus Petition and the Trichels' Response. The Trichels do not cite, much less respond to, the Texas Supreme Court case that governs dual-capacity experts, *Axelson, Inc. v. McIlhany*, 798 S.W.2d 550 (Tex. 1990). The Trichels also do not cite or respond to the Texas Supreme Court case which suggests that privilege objections raised in depositions should be addressed on a question-by-question basis. *See West v. Solito*, 563 S.W.2d 240, 246 (Tex. 1978). The Trichels also do not confront *In re Mendez*, which holds that if a consulting expert's mental impressions and opinions are included in an affidavit, the consulting expert privilege is waived only as to those mental impressions and opinions contained in the affidavit. 234 S.W.3d 105, 111 (Tex. App.—El Paso 2007, orig. proceeding).

Those arguments that the Trichels do address are without merit. Contrary to the Trichels' position, Union Pacific met its burden to make a prima facie showing that the consulting expert privilege and work product doctrine apply, and it did not waive the privileges. The trial court abused its discretion by finding that the protections of the consulting expert privilege and work product doctrine were completely destroyed.

**ARGUMENT IN REPLY**

## I.     The Trichels misrepresent the facts.

The Trichels devote a significant portion of their Mandamus Response to setting forth a "statement of facts" detailing matters that are deeply disputed and irrelevant to the discreet issue presented in the Mandamus Petition. However, Union Pacific must respond to the Trichels' statement of facts to briefly correct a few key inaccuracies.

The Trichels take the mandamus record out of context when they contend that Union Pacific tells "three contradictory stories" about Hampton's phone. Because Union Pacific was not present when Hampton's phone was reset, Union Pacific relies on Hampton's explanation about what happened to his phone. According to Hampton, he went to the Verizon store because his phone's screen and battery were malfunctioning. (R8 at Ex. C at 173-75, 177-78.) Hampton asked the Verizon technician to "fix" the phone, and the technician suggested a "reset." (R8 at Ex. C at 178-79.)

Union Pacific's communications about the reset are all in accord with one another and reflect Hampton's account. *See* Mandamus Petition at p. 3 ("Hampton went to Verizon Wireless to fix the phone, where a Verizon technician suggested that the phone be reset. . . . Not fully realizing that this procedure might erase data, Hampton agreed to reset the phone."); R9 Ex. 1 (Union Pacific's counsel told the

Trichels' counsel: "Regarding Hampton's phone . . . this apparently was done by his service provider inadvertently during the diagnosis of a battery problem."); R10 at 4 (". . . the Verizon technician suggested that the phone be reset. Not fully realizing that this reset procedure might erase data from the phone, and thinking all of his data had already been imaged anyway, Hampton approved the technician's suggestion and had the phone reset.").

In reality, it is the Trichels who take inconsistent positions. In their Mandamus Response, the Trichels contend that "the destruction of . . . data occurred on June 22, 2014, while Koenig was actively working with Hampton." (Mandamus Response at 1.) However, in a motion to disqualify Union Pacific's counsel currently pending in the trial court, the Trichels argue that "the wipe or 're-set' of the phone does not occur until October 14, 2014." (2d Supp. R24 at 3.) The Trichels select this later date in their motion to disqualify so that they can argue (incorrectly) that Union Pacific's counsel knew about the reset before it happened. (Supp. R24 at 3.) Thus, the Trichels contend that the reset occurred on June 22, 2014 when it benefits them in their mandamus arguments in this Court, and that the reset occurred on October 14, 2014 when it benefits them in their disqualification arguments in the trial court. The spoliation allegations against Union Pacific and the motion to disqualify Union Pacific's counsel are part of an ongoing series of aggressive litigation tactics that the Trichels have employed throughout this case.

When the Trichels finally reach the merits of their arguments in their Mandamus Response, it is evident that the trial court abused its discretion.

## II. Union Pacific met its burden to make a prima facie showing that the consulting expert privilege and work product doctrine apply.

Contrary to the Trichels' arguments, Koenig's affidavit satisfied the minimum quantum of evidence necessary to support the consulting expert privilege and work product doctrine.

### A. The party resisting discovery has the burden to present a minimum quantum of evidence supporting the privilege.

The Trichels contend that Union Pacific did not meet its burden to show privilege, but they overstate the burden. The party resisting discovery has the burden to make a "prima facie showing" that a privilege applies. *In re E.I. DuPont de Nemours and Co.*, 136 S.W.3d 218, 223, 225 (Tex. 2004); *In re BP Products N. Am. Inc.*, 263 S.W.3d 106, 111-12 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding). "The prima facie standard requires only the 'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *E.I. DuPont de Nemours*, 136 S.W.3d at 223.

If a party requests a hearing on an objection or privilege asserted during a deposition, the party asserting the privilege must present "*any evidence necessary to support the objection or privilege either by testimony at the hearing or by affidavits served on opposing parties at least seven days before the hearing.*" TEX.

R. Cɪᴠ. P. 199.6 (emphasis added); *see also* Tᴇx. R. Cɪᴠ. P. 193.4.[1] As the words "any evidence necessary" suggest, "evidence may not always be necessary to support a claim of protection from discovery." *In re Union Pac. Resources Co.*, 22 S.W.3d 338, 341 (Tex. 1999).

### B. Koenig's affidavit provided the minimum quantum of evidence to support Union Pacific's objections.

Union Pacific easily met its burden. To make a prima facie case that the consulting expert privilege applies, Union Pacific simply had to show that Koenig was an expert who is "consulted, retained, or specially employed by [Union Pacific] in anticipation of litigation or in preparation for trial, but who is not a testifying expert." Tᴇx. R. Cɪᴠ. P. 192.7. To make a prima facie case that the work product doctrine applies, Union Pacific simply had to show that (1) Koenig is Union Pacific's representative, consultant, or agent, and (2) that Koenig's materials, mental impressions, and communications with Union Pacific were developed or made in anticipation of litigation or preparation for trial. Tᴇx. R. Cɪᴠ. P. 192.5.

Koenig's affidavit met the "minimum quantum of evidence" necessary to show that the consulting expert privilege and work product doctrine apply. The affidavit shows that Koenig is a consultant engaged by Union Pacific. It states that

---

[1] Although the Trichels rely on Texas Rule of Civil Procedure 193.4, Rule 199.6 governs privilege objections asserted during a deposition. The rules are similar, but not identical. Both require only that a party present "any evidence necessary" to support the privilege.

Koenig is a "Director of Franklin Data" and that "Franklin Data was retained by Union Pacific Railroad Company ('Union Pacific') to preserve data from the cell phone of James Wilson and Jeremy Hampton." (R8 at Ex. B at 1; R10 at Ex. B at 1.) Koenig's affidavit also shows that he was retained in preparation for trial. It states that Koenig's work preserving the data began on May 13, 2014, which was more than two weeks after the Trichels filed suit. (R8 at Ex. B at 1; R10 at Ex. B at 1; *see also* R1.)

The Trichels argue that Koenig's affidavit was insufficient because Koenig did not "designate" himself as a "consulting or dual-capacity expert" and did not specifically state that he was retained "in anticipation of litigation," but such conclusory statements are not required. (Mandamus Response at 24-25, 26-27.) Affidavits need only state the "factual basis" for application of the privilege. *E.I. DuPont de Nemours*, 136 S.W.3d at 224; *BP Prods. N. Am.*, 263 S.W.3d at 113. Conclusory statements that the privilege applies are not only unnecessary—they are insufficient to prove the privilege. *E.I. DuPont de Nemours*, 136 S.W.3d at 224; *BP Prods. N. Am.*, 263 S.W.3d at 113.

The Trichels also suggest that Koenig is not a consulting expert because "after filing its petition for writ of mandamus, UP designated Koenig to testify to matters in his 'deposition as well as any other information they may have.'" (Mandamus Response at 25, citing Supp. R23 at 12.) However, the Trichels fail to

mention that Union Pacific designated Koenig as a person with knowledge of relevant facts, not as a testifying expert. (Supp. R23 at 12.) Under *Axelson*, the privilege is not destroyed simply because Koenig is both a fact witness and a consulting expert. *See Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 554 (Tex. 1990); *see also In re Energy Transfer Partners, L.P.*, No. 12-08-00397-CV, 2009 WL 1028056, at *4 (Tex. App.—Tyler Apr. 15, 2009, orig. proceeding) (mem. op.).

### C. Koenig's affidavit met all procedural requirements.

Although the Trichels rely heavily on Koenig's affidavit in their Mandamus Response, they pretend as if it was not properly before the court during the hearing on Union Pacific's objections. (*See, e.g.*, R15 at 6, 14, 17.) But Koenig's affidavit met all procedural requirements under Rule 199.6. The affidavit was timely because it was filed more than seven days before the hearing on Union Pacific's objections. TEX. R. CIV. P. 199.6; *see also* TEX. R. CIV. P. 194.3. Union Pacific filed Koenig's affidavit on January 16, 2015 and again on May 27, 2015, well in advance of the trial court's June 24, 2015 hearing. (R8 at Ex. B; R10 at Ex. B.)

The Trichels complain that "UP did not offer any evidence" supporting the privileges, but Union Pacific had no obligation to formally offer the affidavit into evidence at the hearing. A formal offer is not required if "the record of the hearing shows that the parties and the court undisputedly considered the affidavits." *In re*

*Monsanto Co.*, 998 S.W.2d 917, 926 (Tex. App.—Waco 1999, orig. proceeding). Here, the record shows that the trial court considered the affidavit in reaching its ruling. In summarizing the parties' dispute, the trial court stated:

> I've got an affidavit here wherein Mr. Koenig . . . makes certain statements regarding his investigation into a cell phone, the downloading of information and the forensic examination of a cell phone that's at issue in this lawsuit. . . . And Mr. Koenig is a forensic computer examiner, and he has provided an affidavit . . . as to the investigation he made into the contents of that cell phone and in this affidavit has made several factual statements . . . .

(R15 at 4-5; App. A.) The trial court also stated that it overruled Union Pacific's objections "based on evidence that's before me, the affidavit that I'm looking at right now." (R15 at 18; App. A.)

There is no question that the affidavit was before the court and it satisfied the minimum quantum of evidence to make a prima facie showing.

## III.  Union Pacific did not waive the consulting expert privilege.

All of the Trichels' attempts to show that Union Pacific waved the privilege fail.

### A.  Union Pacific did not waive the consulting expert privilege by filing Koenig's affidavit.

The Trichels argue that privilege "never attached," or alternatively was waived, because Koenig's affidavit contained opinions in addition to factual matters. (Mandamus Response at 25-26, 28-30, 33.) According to the Trichels, the

- 8 -

affidavit included opinions about "the status of data on the phones in question, whether the data was or is readable, whether data exists, how much data exists, and the reason for the 39-day delay in obtaining the data from Hampton's phone that allowed the data to be erased." (Mandamus Response at 19.) These matters all concerned factual information known by Koenig. But even if some statements in the affidavit could be construed as mental impression or opinions, the privilege still applies as to Koenig's *undisclosed* mental impressions and opinions. *See In re Mendez*, 234 S.W.3d 105, 107 (Tex. App.—El Paso 2007, orig. proceeding).

The Trichels do not confront *In re Mendez*, which sets forth the rule for consulting experts who disclose some opinions in an affidavit. 234 S.W.3d 105, 107 (Tex. App.—El Paso 2007, orig. proceeding). In that case, the defendant's consulting expert filed an affidavit opining that the plaintiff's medical treatment was excessive and unnecessary. The court held that, by filing the affidavit, the defendant waived the consulting expert privilege "as to those matters stated in the affidavit." *Id*. at 111. However, the court made clear that its "opinion should not be read as holding that [the defendant] waived the consulting expert privilege with respect to the other opinions and mental impressions held by [the consulting expert] which are not stated in the affidavit." *Id*. The consulting expert privilege continued to protect the expert as to other matters. *Id*.

The same rule applies here. None of the statements contained in Koenig's affidavit are privileged, whether the statements are construed as expressing facts or opinions. However, Koenig's mental impressions and opinions that are not contained in Koenig's affidavit remain privileged. The trial court misapplied the law and abused its discretion when it determined that the consulting expert privilege was completely destroyed as to all mental impressions and opinions, regardless of whether the statements appeared in Koenig's affidavit. (R15 at 21-22; App. A.)

**B.     The offensive use doctrine does not apply because Union Pacific does not assert any affirmative claims.**

Unable to show that the mere filing of an affidavit waives the privilege in its entirety, the Trichels attempt to establish waiver through the offensive use doctrine. Because the offensive use doctrine applies only to parties who are seeking affirmative relief, the Trichels make a strained argument that Union Pacific asserts affirmative claims against them. *See Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 164 (Tex. 1993).

Union Pacific's position is strictly defensive in nature. Union Pacific is not seeking any counterclaims against the Trichels, and it has not moved for sanctions against the Trichels. The Trichels contend that Union Pacific made a "claim" in a "pleading" that the Trichels' position was groundless and brought in bad faith, but they fail to mention that the "pleading" in which Union Pacific made these

statements was Union Pacific's Response to the Plaintiffs' Motion to Compel. (Mandamus Response at 30-31; R8.) In its Response, Union Pacific was simply defending against the Trichels' allegations of spoliation.

Because Union Pacific does not seek affirmative relief against the Trichels, the offensive use doctrine does not apply. *See Republic Ins.*, 856 S.W.2d at 164 (holding that the offensive use doctrine did not apply to an insurer which filed a declaratory judgment action, because the relief sought by the insurer was "in reality, defensive in nature").

### C. Union Pacific did not waive the privilege by attempting to work with the Trichels to preserve evidence.

In an even greater stretch, the Trichels next suggest that Union Pacific waived the consulting expert privilege when it sent a letter to the Trichels' counsel suggesting ways that the parties could work together to preserve evidence. The letter showed that Union Pacific cooperated with the Trichels to preserve a wide range of evidence. (R8 at Ex. A.) The letter also informed the Trichels that Union Pacific had "hired a consultant to download a forensic copy of the driver's phone" who had encountered difficulties downloading the contents of Hampton's phone. (R8 at Ex. A at 2.)

Contrary to the Trichels' argument, Union Pacific's letter did not invite the Trichels to work directly with Koenig, and the letter did not show any intent by Union Pacific to waive the privilege. The Trichels' assertion that Union Pacific's

letter somehow waived privilege is completely baseless. *See In re Energy Transfer Partners, L.P.*, No. 12-08-00397-CV, 2009 WL 1028056, at \*\*5-6 (Tex. App.—Tyler Apr. 15, 2009, orig. proceeding) (mem. op.) (holding there was no waiver when the defendants told plaintiffs in an email that they would review the consulting expert's survey and "let [plaintiffs] know what we find").

**IV.    The consulting expert privilege is not defeated simply because testifying experts read Koenig's affidavit.**

The Trichels also contend that the consulting expert privilege does not apply because two testifying experts reviewed mental impressions and opinions in Koenig's affidavit. The Trichels insist that the affidavit contained mental impressions and opinions, but they fail to point to a single sentence in the affidavit that qualifies as a mental impression or opinion. Koenig's statements about the data on Hampton's phone were all factual in nature, and Koenig disclosed those facts during his deposition, as he was required to do under *Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 554 (Tex. 1990).

To the extent that any of Koenig's statements fall into a gray area that might be construed as either fact or opinion, the consulting expert privilege still applies. The privilege protecting the consulting expert's "identity, mental impressions, and opinions" is broken only if a testifying expert reviewed the consulting expert's "mental impressions and opinions." TEX. R. CIV. P. 192.3(e) ("The identity, *mental impressions, and opinions* of a consulting expert *whose mental impressions and*

- 12 -

*opinions* have not been reviewed by a testifying expert are not discoverable."). The two identical references to mental impressions and opinions in Rule 192.3(e) logically refer to the same mental impressions and opinions—and not two completely different sets of information. Thus, the Trichels' suggestion that a testifying expert's review of the statements in Koenig's affidavit destroys the privilege as to the mental impressions and opinions that they seek to obtain through discovery runs afoul of Rule 192.3(e).

The Trichels' interpretation of the rule would also demolish the Texas Supreme Court's holding in *Axelson, Inc. v. McIlhany*, 798 S.W.2d 550 (Tex. 1990). *Axelson* allows a consulting expert to retain the privilege while disclosing information within his factual knowledge. If the proponent of the evidence could easily recast information within a consulting expert's factual knowledge as an opinion, then he could always destroy the privilege by asking a testifying expert review the information. The Trichels—who completely ignore *Axelson* in their Response—do not consider the interplay between *Axelson* and Rule 192.3(e).

## V. Union Pacific was not required to specify every objectionable question in its mandamus petition.

Finally, the Trichels argue that Union Pacific waived "the bulk" of its objections by failing to record each and every objectionable question in its mandamus petition. (Mandamus Response at 38.) In making this argument, the Trichels overlook the trial court's ruling that the consulting expert privilege and

- 13 -

work product doctrine do not protect the answers to *any* questions. (R15 at 17-18, 21-22; App. A.) The trial court ruled that Koenig's status as a consulting expert was "completely destroyed." (R15 at 21-22; App. A.) The trial court also refused to rule on Union Pacific's objections on a question-by-question basis because he did not know how to "piecemeal it" without "removing the complete status of a consulting expert." (R15 at 21-22; App. A.) Thus, it was not necessary to set forth each and every objectionable question in the mandamus petition. The trial court abused its discretion by finding that the protections of the consulting expert privilege and work product doctrine were destroyed as to *all* matters.

## CONCLUSION AND PRAYER

Union Pacific respectfully requests that this Court (1) grant its mandamus petition, (2) issue a writ of mandamus directing the trial court to vacate its order overruling Union Pacific's privilege objections and finding that Koenig's consulting expert status was destroyed, and (3) grant all further relief to which Union Pacific is entitled.

Respectfully submitted,

HAYNES AND BOONE, LLP


 */s/ Kent Rutter*
Kent Rutter
State Bar No. 00797364
Christina Crozier
State Bar No. 24050466
1221 McKinney, Suite 2100
Houston, Texas 77010-2007
Telephone: (713) 547-2000
Telecopier: (713) 547-2600
*Kent.Rutter@haynesboone.com*
*Christina.Crozier@haynesboone.com*


KANE RUSSELL COLEMAN & LOGAN PC

Marcy Lynn Rothman
State Bar No. 17318500
M. Daniel Guerra
State Bar No. 00793865
Galleria Tower II, 10th Floor
5051 Westheimer Road
Houston, Texas 77056
Telephone: (713) 425-7444
Telecopier: (713) 425-7700
*MRothman@krcl.com*
*DGuerra@krcl.com*

ATTORNEYS FOR RELATOR,
UNION PACIFIC RAILROAD COMPANY

# VERIFICATION

STATE OF TEXAS        §
                                  §

COUNTY OF HARRIS    §

BEFORE ME, the undersigned Notary Public, on this day personally appeared Marcy Lynn Rothman, who, being by me duly sworn on her oath, deposed and said that she is an attorney for Relator, Union Pacific Railroad Company; that she has read the foregoing Mandamus Reply; that the factual statements contained therein, not independently proved or verified through the mandamus record, are true and correct; and that the documents included in the Appendix to the Mandamus Reply are true and correct copies of the originals.



Marcy Lynn Rothman

SUBSCRIBED AND SWORN TO BEFORE ME, this 10th day of August, 2015.

CHRISTINA RICHISON
Notary Public
STATE OF TEXAS
My Comm. Exp. April 19, 2018

Notary Public in and for
the State of Texas

**CERTIFICATE OF COMPLIANCE**
**TEX. R. APP. P. 9.4(i)(3)**

I hereby certify that this Mandamus Reply contains a total of **3,290** words, excluding the parts of the reply exempted under TEX. R. APP. P. 9.4(i)(1), as verified by Microsoft Word 2010. This Mandamus Reply is therefore in compliance with TEX. R. APP. P. 9.4(i)(2)(C).

Dated: August 10, 2015.


*/s/ Kent Rutter*
Kent Rutter
*Counsel for Relator,*
*Union Pacific Railroad Company*

## CERTIFICATE OF SERVICE

In accordance with the Texas Rules of Appellate Procedure, the undersigned hereby certifies that a true and correct copy of the *Mandamus Reply* has been served on Respondent and the following counsel of record via e-service on this 10th day of August, 2015:

***Respondent:***

Honorable Kyle Carter
125th District Court
201 Caroline, 10th Floor
Houston, Texas 77002

***Counsel for Real Parties in Interest, Donald and Mary Trichel, Individually and as Next Friends of Nicholas Trichel:***

Vuk S. Vujasinovic
Brian Beckcom
VB ATTORNEYS, PLLC
6363 Woodway, Suite 400
Houston, Texas 77057

Levon Hovnatanian
Dale Jefferson
MARTIN, DISIERE, JEFFERSON & WISDOM
Niels Esperson Building
808 Travis, 20th Floor
Houston, Texas 77002

***Counsel Real Party in Interest Jeremy Ray Hampton:***

Adolfo R. Rodriguez, Jr.
Wilson C. Aurbach
Christopher K. Rusek
RODRIGUEZ LAW FIRM, P.C.
1700 Pacific Ave., Suite 3850
Dallas, Texas 75201

*/s/ Kent Rutter*
Kent Rutter

- 18 -

# APPENDIX

Tab A      —      Motions Hearing, June 24, 2015

# TAB A

Motions Hearing, June 24, 2015

NO. 2014-23177

DONALD AND MARY TRICHEL,        * IN THE DISTRICT COURT OF
INDIVIDUALLY AND AS NEXT        *
FRIENDS OF NICHOLAS TRICHEL     *
                                *
                                *
VS.                             * HARRIS COUNTY, TEXAS
                                *
UNION PACIFIC RAILROAD COMPANY*
AND JEREMY RAY HAMPTON          * 125TH JUDICIAL DISTRICT

**********************************

MOTIONS HELD BEFORE

THE HONORABLE KYLE CARTER

JUNE 24, 2015

**********************************

MOTIONS HELD BEFORE THE HONORABLE KYLE CARTER were taken in the above-styled and numbered cause on the 24th of June, 2015, from 1:56 p.m. to 2:27 p.m., before Debbie Boothe, CSR, in and for the State of Texas, reported by machine shorthand at the Harris County Civil Courthouse, 125th Judicial District Court Jury Room, 201 Caroline Street, 10th Floor, Houston, Texas 77002, pursuant to the Texas Rules of Civil Procedure and the provisions stated in the record or attached hereto.

Electronically signed by Debbie Boothe (301-017-427-7392)                    5af73957-9bc9-4781-870d-25e80535ae10

Page 2

A P P E A R A N C E S

FOR THE PLAINTIFFS:

          Mr. Brian Beckcom
          Mr. Vuk Vujasinovic
          VB Attorneys, PLLC
          6363 Woodway, Suite 400
          Houston, Texas  77057
          (713) 224-7800    (713) 224-7801 Facsimile
          brian@vbattorneys.com
          vuk@vbattorneys.com

FOR THE DEFENDANT UNION PACIFIC RAILROAD COMPANY:

          Mr. Daniel Guerra
          Kane, Russell, Coleman & Logan, P.C.
          919 Milam Street, Suite 2200
          Houston, Texas  77002
          (713) 425-7400    (713) 425-7700 Facsimile
          dguerra@krcl.com

FOR THE DEFENDANT JEREMY RAY HAMPTON:

          Mr. Wilson C. Aurbach
          The Rodriguez Law Firm
          1700 Pacific Avenue, Suite 3850
          Dallas, Texas  75201
          (214) 220-2932    (214) 220-2920 Facsimile
          waurbach@therodriguezfirm.com

THE COURT:

          The Honorable Kyle Carter
          125th Judicial District Court
          Harris County Civil Courthouse
          201 Caroline Street, 10th Floor
          Houston, Texas  77002
          (713) 368-6141

OTHER APPEARANCES:

          Mr. Paul Price

Electronically signed by Debbie Boothe (301-017-427-7392)      5af73957-9bc9-4781-870d-25e80535ae10

INDEX

WITNESS:  WILL KOENIG

PAGE

Appearances                                2

Proceedings                                4

Reporter's Certification                   26

*   *   *   *   *   *

Electronically signed by Debbie Boothe (301-017-427-7392)        5af73957-9bc9-4781-870d-25e80535ae10

MOTION PROCEEDINGS

JUDGE CARTER: Now we're on the record at this time. This is Judge Carter. I've come in to rule on an issue that's been brought to my attention during a deposition that's occurring in the Court's jury room today. The issue that's been brought to the Court's attention is whether or not a consulting expert, actually a witness that has been represented to be a dual capacity witness, a fact witness in addition to a consulting expert, Mr. Will Koenig, or Koenig, whether or not his underlying impressions and work product is discoverable in this case as a result of either waiver or disclosure, or I think plaintiff's counsel you also argued by offensive use in this case.

Specifically, we've got -- I've got an affidavit here wherein Mr. Koenig represents certain -- or makes certain statements regarding his investigation into a cell phone, the downloading of information and the forensic examination of a cell phone that's at issue in this lawsuit. Specifically, plaintiff has the question of why was this cell phone that was the driver of the 18-wheeler -- why was that cell phone essentially wiped clean.

And Mr. Koenig is a forensic computer examiner, and he has provided an affidavit into the

Electronically signed by Debbie Boothe (301-017-427-7392)                    5af73957-9bc9-4781-870d-25e80535ae10

investigation as to the investigation he made into the contents of that cell phone and in this affidavit has made several factual statements regarding his efforts to try to download the information contained on the phone, review the data that was on the phone, what was identified as a result of his search, some difficulties that Mr. -- that the witness had, Mr. Koenig had, in trying to retrieve this data, and identification of the specific software he used in attempting to retrieve this data. And so I just want to tee it up now and invite Mr. Vujasinovic to go ahead and make your argument now.

MR. VUJASINOVIC: Certainly, Judge. As a reminder, Union Pacific has the burden to establish the existence of any privilege. They also have the burden of proving no waiver occurred when there's a charge of a waiver.

Union Pacific has been waiving around this affidavit since they produced it six months ago by attaching it to their pleading opposing our motion to compel this cell phone data. They've also used it to defend against the charge that Union Pacific spoliated evidence, which is a charge also alleged towards their former employee, Mr. Hampton, and they've used it in several other pleadings in this case.

They claim the consulting expert privilege

Electronically signed by Debbie Boothe (301-017-427-7392)                                    5af73957-9bc9-4781-870d-25e80535ae10

applies. It does not for three reasons: Number one, they've waived the consulting expert privilege by offensively using it in the manner I've described, by disclosing it to us and publicly as a matter of the public record consistently; number two, it's been reviewed by a testifying expert, and under the Texas Rules of Civil Procedure, when that occurs the alleged consulting expert becomes a fully retained expert that we can question as any other retained expert. The testifying expert who reviewed Mr. Koenig's affidavit is our expert, Mr. Paul Price, who is also a forensics expert. And the case law says it doesn't matter whether the testifying expert who reviewed the alleged consulting expert's materials is on the same side or the other side. And finally, the defense already admits now that Mr. Koenig is, in fact, a dual capacity witness, and by doing so, they've admitted he did obtain firsthand knowledge and evidence through his work in this case.

And just by way of an example, there's a 2009 opinion, In Re: Energy Transfer Partners, and this case said -- specifically talks about how a party may waive the consulting expert privilege, and it cites the host of cases that talk about how it can be waived by offensive use, by voluntarily disclosing privileged

Electronically signed by Debbie Boothe (301-017-427-7392)                    5af73957-9bc9-4781-870d-25e80535ae10

information, by filing a controverting affidavit. And so that's the nutshell of the reasons why, Your Honor, we respectfully request you overrule their objection and privilege assertions.

JUDGE CARTER: Response?

MR. GUERRA: Okay. As an initial matter, I would like to point the Court at Axelson -- Axelson, Inc. It's a Supreme Court case 1990, 798 S.W.2d at 550. It has a whole section on dual capacity, but specifically it says "The consulting expert exemption protects the identity, mental impressions and opinions of consulting-only experts, but not the facts." So what this case says very clearly is if -- if you have someone who is a consulting-only expert but has gained firsthand knowledge, that they are dual capacity, and that's exactly what Mr. Koenig is in this case. He went out and he took forensic images -- or attempted to take forensic images of these phones, and as a result that is firsthand knowledge. And with respect to that, he is clearly a fact witness. With respect to his opinions or mental impressions, that is a consult -- he is a consulting expert. And that case is very clear that you can be both, and just because you're one doesn't mean that you automatically waive the second.

With respect to their argument that because

Electronically signed by Debbie Boothe (301-017-427-7392)                5af73957-9bc9-4781-870d-25e80535ae10

their testifying expert reviewed his facts, that all of a sudden he has turned into a testifying expert, he loses a consulting-only expert protection, I would point the Court at Texas Rule of Civil Procedure 192 that says "A party may discover the following information from a testifying expert or regarding a consulting expert whose mental impressions or opinions have been reviewed by a testifying expert." It doesn't say anything about the facts gathered by that testifying -- by that consulting expert.

So I would say -- I haven't seen the case, and Counsel hasn't provided any source citation, but I would suspect that it talks about mental impressions or opinions. So that argument is out the window.

Basically what we have here, if you sort of think about it in the abstract, it's like a car wreck. You have someone who goes out and measures skid marks and takes samples from the concrete and does all sorts of things, and he forwards on those facts. That doesn't -- he is clearly a fact witness with respect to those things, but that doesn't mean that you get to ask him questions about "Well, what does that skid mark mean to you? What does that chip in the concrete mean to you?"

So we have not made any attempt -- we

Electronically signed by Debbie Boothe (301-017-427-7392) 5af73957-9bc9-4781-870d-25e80535ae10

haven't waived anything, and under Axelson we are absolutely under an objection to disclose firsthand information that they gather. But that doesn't mean that we -- they lose -- that Koenig loses his protection as a consulting-only expert. And for that reason, we think we fully complied with the discovery rules and that they shouldn't be permitted to ask him about his opinions, impressions, directions from counsel, communications with counsel or -- or the client.

MR. BECKCOM: In fairness, the analogy --

MR. AURBACH: Hold on, I want to weigh in here, Mr. Beckcom.

MR. BECKCOM: Sure.

MR. AURBACH: You can go ahead after me, if it's all right.

Your Honor, my name is Wilson Aurbach. I represent Mr. Hampton in this case. I don't think you and I have met. I wasn't at the last hearing.

I want to say initially -- I'm not sure if it's on the record or not -- but I disagree with the insinuation that the affidavit from Mr. Koenig points to my client as doing something incorrect. Secondly, I also disagree that the data that we're discussing in this case and relevant data to the case is gone. Mr. Hampton has produced cell phone records, text

message records and then several thousand pages of Facebook records in this case that plaintiffs have claimed are relevant in this case. Those have been produced. Also, there's 1.15 gigabytes of data that was obtained in a download by Mr. Koenig's efforts long ago. That download was not completely -- completely successful. That's why we're here today. We've been discussing the details of the download. Why it wasn't successful I have no doubt is going to be a subject of expert testimony, and those experts will have no more information about what happened downloading the cell phone at each attempt than the information that is already available to everybody today. There's no offensive use here. There's no -- there's no chance that these future expert testifiers will have more information from either side than they do today.

MR. BECKCOM: Your Honor, in fairness, just a couple of issues. Mr. Hampton responded to admissions that we went yesterday about his Facebook use and didn't admit any of the Facebook use at all. So the idea that -- or even that he was on the phone or anything at all like that. So the idea that he's produced a bunch of information about his phone is completely inaccurate.

We know for a fact, at least according to an independent witness from Verizon, that Union Pacific

Electronically signed by Debbie Boothe (301-017-427-7392)                    5af73957-9bc9-4781-870d-25e80535ae10

and Mr. Hampton specifically requested that Verizon erase his phone before they had successfully captured the data. So the analogy that Mr. Guerra is using about the normal consulting expert issue is a little bit different here because there are -- there are very serious issues that reflect evidence destruct -- that relate to evidence destruction.

MR. GUERRA: And, Your Honor, we completely --

MR. VUJASINOVIC: Here's the Verizon transcript from last week.

MR. GUERRA: We suspect -- we think the credibility of that witness is very suspect. But notwithstanding, that testimony has nothing to do with the waiver -- the alleged waiver of the privilege with respect to Mr. Koenig.

MR. AURBACH: And we're getting too far in the weeds here. Your Honor, I believe that this transcript you're seeing here is months and months after Mr. Koenig had already testified there was no relevant data on the phone. As of June 23, 2014, there's no relevant data on that phone. Anything that happens after that couldn't --

MR. VUJASINOVIC: Well, what they're telling you is he had already wiped it before that. So

Electronically signed by Debbie Boothe (301-017-427-7392)                                                 5af73957-9bc9-4781-870d-25e80535ae10

all this shows is he's trying to wipe it again.

MR. AURBACH:  There's no reason to tell him what I'm telling him.

MR. BECKCOM:  Well, the -- from a purely factual standpoint, I think everybody will agree with this:  There was a download attempt by Mr. Koenig.  That acquired 1.15 gigabytes of data.  That was on May 15th.  Everybody is on the same page with that.

Then there was another -- and that was -- that download because of the way it was done, a lot of that information I understand is not accessible.  Then about a month later on June 23rd, there was another download and there was significantly less data a month later on the phone -- and Mr. Koenig just testified to that -- significantly less than 1.15 gigabytes of data.  So data -- there's no question data was removed.  There is no data that pre -- on the second download that predates June 23, 2014.  All we are trying to do is get to the bottom of why that is the case, and like Mr. Vujasinovic is saying, they've used this affidavit to defend Mr. Hampton and Union Pacific's conduct and then -- but then they're turning around and they're not letting us ask questions to get to the bottom of this issue.

MR. VUJASINOVIC:  Let me speak to that,

Electronically signed by Debbie Boothe (301-017-427-7392)                    5af73957-9bc9-4781-870d-25e80535ae10

because, Judge, we deposed Mr. Hampton in November, and then shortly after that they assigned separate counsel for him. He was previously represented by the same firm that still represents Union Pacific now.

Union Pacific has charted a course now and a strategy to say "Here's all we did to tell Hampton and Wilson to hold onto your phones, don't delete them," issued a litigation hold order. They're throwing out more affidavits from other people, and their -- their strategy now is to say "We told them not to get rid of the phones. We specifically told them not to do that. We hired this expert. Look at all this stuff this expert -- our expert did, and if the phone was deleted" -- which, by the way, we know it was -- "by Mr. Hampton, that's -- that's his fault, and the spoliation charge shouldn't be on -- be on us."

Now, the problem is that this gentleman here, Mr. Koenig, in June last year basically determined that there's no -- data had been removed from the phone. Now, obviously he would have told Union Pacific and their lawyers that, and then at that point in time they would have -- they would be on notice to try to preserve whatever might still be there. And then four months after that they go to the Verizon store, not Mr. Hampton alone but personally accompanied by a Union Pacific

witness who we know is a claims agent, and they specifically tell the lady, she said, three to four times "Make sure it's all wiped. Wipe the phone." And so they want to be able to assert that defense, that we, Union Pacific, are not liable for spoliation, throw out that detailed affidavit, use it offensively, affirmatively disclose it, and then when we try to get behind the scenes as to "Well, what did UP and their counsel know or not know," you know, prevent us from asking it, from asking about that. So it's -- again, it's like putting a witness on the stand, pass the witness. No, you don't get to ask him any -- any real questions.

MR. GUERRA: Your Honor, they --

MR. VUJASINOVIC: And they've -- and they've -- they are not addressing waiver. This Axelson case that I've cited, which is the main case on dual capacity, does not concern the issue of waiver, and it also doesn't concern the issue of the work having been reviewed by a testifying expert.

MR. GUERRA: Your Honor, I would make a couple of points. One, we haven't seen their -- their brief on this issue, which they claim they have, but we haven't seen it. We haven't seen the case law. With respect to the affidavit, they have asked hours of

Electronically signed by Debbie Boothe (301-017-427-7392)          5af73957-9bc9-4781-870d-25e80535ae10

questions about the very specifics of what was going on. The only thing we're objecting to are his mental impressions, opinions, communications with counsel, that sort of thing. Because the data is what the data is, right, and what he did is what he did. But they don't get to go behind it, and under Axelson he's a dual capacity witness. I mean, it's just -- it's clear. And if -- if the tables were turned and we were trying to protect this information, the information that's contained on the affidavit, clearly under Axelson we would have no choice but to give it up because he's a dual capacity and that's evidence that he learned firsthand. But that doesn't mean that his status as a -- as a consulting-only expert gets thrown out the window. So there has been no waiver.

And with respect to all this other stuff, let me just say very clearly, the testimony of the witness who claims that UP told Verizon to delete his phone is just -- it's not credible. I'll just be very clear right now. That is just not something that Union Pacific would have done.

MR. BECKCOM: Well --

MR. GUERRA: And with that -- with that said, Your Honor, we have permitted the plaintiffs -- or, you know, pursuant to court order we have permitted

Electronically signed by Debbie Boothe (301-017-427-7392)                    5af73957-9bc9-4781-870d-25e80535ae10

the plaintiffs to take -- to ask questions about each and every time -- each of the five times that he went out there to gather this information. But beyond that, we get into the realm of his impressions, opinions, communications with counsel, all those types of things that are absolutely protected by consulting privileges.

MR. BECKCOM: Your Honor, just very briefly. There's -- factually, here's what I think everybody agrees with: That there are records from Verizon that show that Mr. Hampton went to the Verizon store and October 14th of last year and had his phone reset. Those are records that we get from Verizon. Those are written records.

MR. AURBACH: I object. That's not accurate. The Verizon records --

MR. BECKCOM: There are records --

MR. AURBACH: -- don't say that.

MR. BECKCOM: Okay. There are records that show that Mr. Hampton went to Verizon on October 14th.

MR. AURBACH: True.

MR. BECKCOM: There is a chain of custody document that is a Union Pacific document that shows this Samantha Rickard, a claims agent, went to that same Verizon store on that same date and met with Mr. Hampton. I mean, we all agree on that, don't we?

Electronically signed by Debbie Boothe (301-017-427-7392)                    5af73957-9bc9-4781-870d-25e80535ae10

MR. GUERRA: I agree with that, but I disagree vigorously with the statement that she told them to delete the phone. But the point is that that's --

MR. BECKCOM: My only point is the phone -- and we know and I think everybody knows that on October 14th the phone was reset. Everybody agrees. Even Mr. Hampton agreed on that.

MR. GUERRA: But the point here, Your Honor, is that all of that is beyond what we're talking about here, which is the attempted data acquisition on five different occasions by this forensic expert.

MR. VUJASINOVIC: It doesn't relate just to data acquisition. It relates to what he told to Union Pacific and counsel when he was doing all that, had those problems, which is relevant to why they didn't do anything else to stop the destruction of this evidence, and that's exactly why they're throwing that affidavit out. Look here, look at all this stuff we did. You know, go after Hampton. It's his deal. That's -- that's the bottom line on that.

JUDGE CARTER: Okay. It's a really interesting issue that it presents for the Court, especially as it relates to a cell phone and the

downloading of information contained on a cell phone. But based on evidence that's before me, the affidavit that I'm looking at right now, along with the arguments of counsel, the objections are overruled at this time.

Is there anything else that you need from me?

MR. BECKCOM: One minute, Your Honor, and I think Mr. Guerra and I can present this. Mr. Wilson -- we originally got a redacted copy of his data, and then Mr. Guerra and I agreed that they would give us a redacted -- an unredacted copy because Mr. Wilson is dead.

JUDGE CARTER: Okay.

MR. BECKCOM: And they gave me --

JUDGE CARTER: That's a shame.

MR. BECKCOM: Yeah. They -- yeah. They gave me an unredacted copy, and I found out this morning that accidentally -- and I'm not saying they did this on purpose or anything at all like this, but there was some other data that was not provided. And our agreement was an unredacted copy. I understand from Mr. Guerra that there may be some kind of embarrassing photos --

MR. GUERRA: It's --

MR. BECKCOM: -- or something, but the guy is dead. And so I just -- I mean, if it's embarrassing

Electronically signed by Debbie Boothe (301-017-427-7392)    5af73957-9bc9-4781-870d-25e80535ae10

photos, I'm not even going to use it anyway.  I just want our agreement to be honored.  That's all.

MR. GUERRA:  Your Honor, and I want to show this to the Court.  It's here for you, if you would like to look at it.  I just think it's -- we don't have an objection to the production.  We just think it's highly embarrassing --

JUDGE CARTER:  Ooh.

MR. GUERRA:  -- and it's just not relevant in any way to what's going on in this case.  So if the Court would like for me to provide a copy to other counsel, I'm happy to do so.  I just don't see that it's relevant.

MR. BECKCOM:  We had an agreement that you would produce an unredacted --

MR. GUERRA:  Brian, morally I feel inappropriate giving that to you without being ordered to do so.  I mean, I understand we have --

MR. BECKCOM:  We did have an agreement.

MR. GUERRA:  We did.  Absolutely.

JUDGE CARTER:  All right.  All right.  All right.  We don't want to fight about it.  I'm reading.

MR. VUJASINOVIC:  He was follow -- he was a co-worker of Mr. Hampton.  He was following him at the time of the crash and an alleged witness who died before

Electronically signed by Debbie Boothe (301-017-427-7392)                    5af73957-9bc9-4781-870d-25e80535ae10

we could depose him.

MR. GUERRA: And, Your Honor, there was an agreement initially to provide 12 hours. We provided that, and then I don't think there's anything else that happens in those records that are relevant.

MR. BECKCOM: And, Your Honor, just so you know, in addition to him being deceased, his wife got remarried very soon after he died and has raised no objections at all to the production of any of his -- I think as his wife when he died, she would be the one that would have to raise objections on his behalf.

MR. VUJASINOVIC: It's already in the hands of a third party.

MR. GUERRA: Obviously, this is an in-camera review.

MR. VUJASINOVIC: Oh, I understand. I'm not referring to Judge Carter. I meant Union Pacific, his former employer, has it. So apparently it wasn't private enough for him not to give it to his employer, and he's not a party to the case.

MR. BECKCOM: And he's dead.

MR. GUERRA: Are you that interested in what his search history is?

MR. BECKCOM: I don't know what --

MR. VUJASINOVIC: Well, we have no idea

Electronically signed by Debbie Boothe (301-017-427-7392)     5af73957-9bc9-4781-870d-25e80535ae10

what it is.

MR. BECKCOM:  And if it's that bad, I wouldn't use it anyway, of course.

JUDGE CARTER:  Well, it will be the subject of some discussion, I think, later, but I'm going to order that it be produced.

MR. GUERRA:  Okay.  Here you go.

MR. BECKCOM:  Thank you.

JUDGE CARTER:  There needs to be some relevant issue, obviously, for us to bring that into evidence.  Otherwise, I anticipate that we'll see something about that at pretrial.

MR. GUERRA:  Right.

Your Honor, so just to be clear so I can understand the scope of the overruling, I mean, so is his status as a consulting expert completely destroyed, or does he maintain any of that status for purposes of going forward?

JUDGE CARTER:  I don't know how I can piecemeal it, you know, and do it without take -- removing the complete status as a consulting expert.

MR. GUERRA:  Okay.

JUDGE CARTER:  Because otherwise we're going to sit here and you're going to object and instruct the witness not to answer anything that you

Electronically signed by Debbie Boothe (301-017-427-7392)

5af73957-9bc9-4781-870d-25e80535ae10

think would come within the scope of some privilege, and I guess as a result of what I've seen here, I'm ruling that that privilege is no longer applicable.

MR. VUJASINOVIC: What I -- you know, what I would add here, Judge, is that -- I mean, that affidavit is basically all the work he's done, and so that's what we tried to question him on today. So it's not like he's done other stuff, to our knowledge, outside the scope of the affidavit.

MR. BECKCOM: Do you have the stuff you withheld pursuant to the privilege with you?

MR. GUERRA: I do.

MR. BECKCOM: Can we --

MR. GUERRA: No, you may not. We'll probably end up discussing this with the Court of Appeals.

MR. BECKCOM: We're right in the middle of his deposition. I thought we were here so Judge Carter could immediately rule and we could proceed with the deposition with the Judge here. I thought that was the whole point of this.

MR. GUERRA: And the Judge has ruled, and I understand the ruling now. And, Brian, we all have legal rights, and I'm protecting my client's legal rights.

Electronically signed by Debbie Boothe (301-017-427-7392)    5af73957-9bc9-4781-870d-25e80535ae10

JUDGE CARTER: All right. So at this point are we shutting down the deposition, or can we get any more good work out of this day?

MR. GUERRA: I think --

MR. VUJASINOVIC: We can't do anymore.

MR. GUERRA: Yeah. And we're not --

MR. VUJASINOVIC: We got what we could, Judge, before your ruling, and I don't think --

MR. BECKCOM: And what we did, Your Honor, just so you know, Mr. Guerra and I -- who I said at the last hearing work well together, and I still think that's the case -- we got as much testimony as we possibly could without getting into the privileges. And then so all that's left right now is a very short bit of questions that apply to the privileges.

JUDGE CARTER: Okay.

MR. BECKCOM: Everything else --

MR. GUERRA: And I agree with that, Your Honor.

JUDGE CARTER: That's fine with me. Okay.

MR. GUERRA: Okay.

JUDGE CARTER: Then we'll finish -- I guess you-all will finish up here in pretty short order, and you can have this affidavit back.

Is there anything else that you-all need

Electronically signed by Debbie Boothe (301-017-427-7392)          5af73957-9bc9-4781-870d-25e80535ae10

from me at this time?

MR. VUJASINOVIC:  I think we're done now with the witnesses; right?

MR. GUERRA:  Yeah, I think we're done with the witnesses, and so the deposition is adjourned and at some point we'll either --

MR. BECKCOM:  We're not finished with the witness.  We're recessing.

MR. GUERRA:  Adjourned; right?  Is that -- is that the right word?

MR. VUJASINOVIC:  Whatever it is, we want to finish him.

JUDGE CARTER:  We recess -- we'll recess this dep -- we're going to recess this deposition at this time, and we'll pick back up with it at a later date as agreed by Counsel or otherwise ordered by this Court.

Just so we are clear going forward, I want the parties to be able to use their deposition time in the most efficient manner, and today we've been brought -- it's been brought up that the parties would like to seek an appeal of this Honorable Court's decision.  I'm happy with that.  I just want you-all to make use -- the best use of the time.  I'm sure that you-all are going to do that as we go forward in this

Electronically signed by Debbie Boothe (301-017-427-7392)                    5af73957-9bc9-4781-870d-25e80535ae10

case.

And subject to recalling any of these witnesses, we're going to recess today.  So any -- there being nothing else?

MR. GUERRA:  I think that's it, Your Honor.

JUDGE CARTER:  All right.

MR. BECKCOM:  Thank you, Your Honor.

JUDGE CARTER:  Thank you very much, everybody.

MR. AURBACH:  Thank you for your time, Your Honor.

(The motion hearing was concluded at 2:27 p.m.)

Electronically signed by Debbie Boothe (301-017-427-7392)    5af73957-9bc9-4781-870d-25e80535ae10

Page 26

COUNTY OF HARRIS )

STATE OF TEXAS )

REPORTER'S CERTIFICATE

I, DEBBIE BOOTHE, a Certified Shorthand Reporter in and for the State of Texas, hereby certify that this transcript is a true record of the proceedings taken before The Honorable Kyle Carter.

I further certify that I am neither attorney, nor counsel for, related to, nor employed by any of the parties to the action in which these motions were made. Further, I am not a relative or employee of any attorney of record in this cause, nor do I have a financial interest in the action.

Subscribed and sworn to on this the 24th day of June, 2015.

_____

DEBBIE BOOTHE, CSR

Texas CSR 4708

Expiration Date: 12-31-16

DepoTexas, Inc.

Firm Registration No. 95

13101 Northwest Freeway, Suite 210

Houston, Texas 77040

888.893.3767

Electronically signed by Debbie Boothe (301-017-427-7392)        5af73957-9bc9-4781-870d-25e80535ae10